IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Hugo Boss Trade Mark Management GMBH & CO. KG | Case No.: 23-cv-23329 |
| Plaintiff, | Judge: Cecilia M. Altonaga |
| v. | |
| The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A | |
| Defendants. | |

### DEFENDANT NO. 178 (STORE SHOPPING)'S MOTION TO VACATE ENTRY OF DEFAULT JUDGMENT AND MEMORANDUM OF LAW

NOW COMES, Defendant Store Shopping ("Defendant"), by and through its undersigned counsel, and requests for this Court to vacate the Fed.R.Civ.Pro. 55(b) Orders on Default Judgment and Final Judgment and Permanent Injunction (D.E. 61, 62) entered January 4, 2024 and an extension of time to answer or otherwise plead affirmative defenses. In support thereof, Defendant states as follows:

1. On August 31, 2023, Plaintiff filed its First Amended Complaint alleging trademark counterfeiting and infringement, false designation of origin and common law unfair competition. (D.E. 5)

2. Also on the same day, Plaintiff filed its Ex Parte Motion for Order Authorizing Alternate Service of Process. (D.E. 9). On September 5, 2023, this Court granted Plaintiff's Motion authorizing Plaintiff to serve the summons, Complaint and subsequent filings via e-mail and website posting. (D.E. 14).

3. On September 11, 15, and 21, 2023, Plaintiff represented that it had served Defendants via email and website posting. (D.E. 33). Specifically, Plaintiff represented that it had served the First Amended Complaint, Plaintiff's trademark registrations, Issued Summons, Order Granting Ex Parte Application for Entry of Temporary Restraining Order, and Motion for Temporary Restraining Order.

4. On December 4, 2023, Plaintiff filed its Request for Clerk's Entry of Default (D.E. 43).

5. On December 19, 2023, Plaintiff filed its Motion for Entry of Final Default Judgment against Defendants. (D.E. 53).

6. On December 26, 2023, Defendant retained counsel and entered an appearance (D.E. 58). Defendant and its attorneys immediately began its investigation into this matter.

7. On December 26, 2023 the undersigned's co-counsel contacted Plaintiff counsel and requested that Plaintiff agree to a twenty-one day extension to answer the complaint and provide the Court with an Amended proposed order exempting Def. No. 178 (Store Shopping). On December 29, 2023, Plaintiff's counsel responded that it would not oppose a twenty-one day extension, however did not agree to exempt Def. No. 178 (Store Shopping) from its proposed order on the pending Motion for Entry of Final Default Judgment. On January 5, 2024, the undersigned conferred with Plaintiff counsel, who advised that Plaintiff opposes Defendant's relief requested herein.

8. On January 4, 2024, the Court entered judgment against Defendant pursuant to Fed.R.Civ.P. 55(b). (D.E. 61, 62).

9. As grounds to vacate the default judgment, Defendant submits that it did not receive proper service and should be permitted to litigate its meritorious defenses. Specifically,

2

Plaintiff's registered trademark does not qualify for protection as pursued against this Defendant. First, the word "BOSS" does not cover Class 25 infantwear and children's clothes per the registration certificate. Second, Defendant used the generic term "mini BOSS" on its infantwear, precluding Plaintiff's purported protection. Furthermore, Plaintiff would not be prejudiced from the requested relief.

10. Defendant respectfully submits that it moved as fast as possible during the holiday season and the sealed filings, to contest the entry of default.

11. Defendant respectfully requests that this Court vacate the Court's Entry of Default pursuant to Fed.R.Civ.P. 55(b) to permit Defendant to substantively defend its case.

## **MEMORANDUM OF LAW**

Pursuant to Fed.R.Civ.P. 55(c), a district court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b). Rule 60(b) provides for the opportunity within a reasonable time based on (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. Fed.R.Civ.P. 60(b); 60(c).

Courts hold a "strong policy of determining cases on their merits" and as a result, defaults are seen with disfavor. *See, e.g., Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.,* 740 F.2d 1499 (11th Cir. 1984); *United Artists Corp. v. Freeman*, 605 F.2d 854, 856–57 (5th Cir.1979); *Charlton L. Davis & Co., P.C. v. Fedder Data Center*, 556 F.2d 308 (5th Cir.1977)" 740 F.2d

1499, 1510-11 (11th Cir.1984) (holding that the district court abused its discretion by refusing to set aside a default judgment). In *Gulf Coast Fans*, the 11th Circuit held that two prerequisites must be met before the merits of a motion to set aside default judgment will be heard: (1) a showing that movant had a meritorious defense to the action that might have affected the outcome and (2) a showing that granting the motion would not result in prejudice to the non-defaulting party. *Id.* at 1511.

The Supreme Court clarified the meaning of "excusable neglect" in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). There, the Court held that a bankruptcy court abused its discretion by refusing to permit the late filing of a proof of claim pursuant to Bankruptcy Rule 9006(b)(1). *Id*. In reaching its decision, the Court reviewed the meaning of excusable neglect in the context of analogous rules that allow for late filings. It stated that "for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 394, 113 S.Ct. at 1497. The Court concluded that whether a party's neglect of a deadline may be excused is an equitable decision turning on "all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. at 1498 (citations and footnotes omitted).

The factors to weigh include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Cheney v. Anchor Glass Container Corp., 71 F.3d 848 (11th Cir. 1996).* The *Cheney* opinion went on to find excusable neglect when "[t]he reason for the delayed filing was a failure in communication between the associate attorney and the lead counsel. The circumstances

4

of the error were obviously within counsel's control, but their noncommunication and resulting inaction amounts only to an 'omission[ ] caused by carelessness.'" *Id.* at 850 (quoting *Pioneer Investment Services*, 113 S.Ct. at 1495).

Additional cases wherein excusable neglect were found include the opinions of *Crawford v. West India Carriers, Inc.*, 56 F.R.D. 32 (S.D. Fla 1972) (excusing a motion for new trial and/or reconsideration filed one day late); *County National Bank of North Miami v. Sheridan,* 403 So.2d 502 (Fla. 4th DCA 1981) (writ reached bank attorney whose secretary, due to sudden illness, failed to set up a file and calendar the garnishment proceeding for a proper response); *Edwards v. City of Fort Walton Beach,* 271 So.2d 136 (Fla.1972) (complaint was buried under pile of documents when it was forwarded to insurer who was executing a nationwide change in its claim processing procedures); and *Florida Aviation Academy, Dewkat Aviation, Inc. v. Charter Air Center, Inc.,* 449 So.2d 350 (Fla. 1st DCA 1984) (inexperienced legal secretary failed to calendar the time for filing an answer to the complaint).

Regarding prejudice to the Plaintiff, the Third Circuit, "of course, it is always prejudicial for a party to have a case reopened after it has been closed advantageously by an opponent's default. But we do not think that is the sense in which the term 'prejudice' is used in [the default judgment case law]." *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999) (quoting *Pratt v. Philbrook*, 109 F.3d 18, 22 (1st Cir. 1997). Thus, prejudice sufficient to deny a motion brought under Fed.R.Civ.P. 60(b)(1) is found where "a plaintiff's ability to pursue the claim has been hindered by, for example, loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523-24 (3d Cir. 2006) (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982)).

## ARGUMENT

This memorandum will discuss why this Court should vacate its orders of final judgment one day after entry and permit Defendant to proceed on the merits of its case. Significantly, Defendant has meritorious defenses to substantively defend itself in the case. Specifically, Defendant explains herein that Plaintiff's registration under Class 25 does not warrant trademark protection because it does not include children's wear or infantwear. In addition, Defendant used the words "mini boss" on a children's sweatshirt available at warlmart.com as a generic term and no reasonable consumer would be confused that Defendant's use of the term is associated with Plaintiff's luxury brand. Finally, Plaintiff failed to effectuate service in this case. Plaintiff is not prejudiced by this Court granting relief and Defendant moved within a reasonable amount of time to set aside the default judgment. Ultimately all of these factors strongly weigh in favor of Defendant and this Court should grant the Motion.

**A.      Defendant took quick action to correct the default.**

Defendant acted quickly to address the Fed.R.Civ.P. 55(a) default status, and later the entry of default under Fed.R.Civ.P. 55(b). As of January 4, 2024, several filings remain under seal in the case, despite the procedural posture being in default status. *See* Docket, attached hereto as Exh. 1. Significantly, the Motion for Temporary Restraining Order with its exhibits are among these documents. *Id*. The lack of access to these case filings prevented Defendant from more expeditiously investigating its case and moving to vacate the Clerk's Entry of Default. In addition, the holiday season between Christmas and New Year's Day caused a delay, as offices were not fully staffed, including the undersigned's and Plaintiff's counsel's. Furthermore, no deadline had been set wherein parties were to respond to Plaintiff's motion for judgment and no

6

date had been set for the motion to be heard by this Court. Defendant had no way to anticipate when its filing would become due.

**B.       Defendant has meritorious defenses to the complaint.**

Defendant respectfully submits that it has meritorious and viable defenses. Specifically, Defendant presents that Plaintiff's allegations of using the words "mini BOSS" on infant and childrens' hooded sweatshirts is not protected under trademark law and provides Defendant with a viable defense under the generic use or fair use doctrine. Second, Defendant submits that Plaintiff did not include infantwear and children's clothing under Class 25 in its trademark registration certificate for the use of the word "BOSS", negating its ability to seek trademark protection. Finally, Defendant presents that it did not receive proper service of the instant action.

        1.      **Defendant's use of "mini BOSS" constitutes general use of the word "BOSS"**

Defendant's e-commerce store on Walmart.com offers for sale a child's hooded sweatshirt with the phrase "mini BOSS". In Defendant's listing, the item heading nor the description reference "HUGO". Even in context, Defendant's product is advertised as a fun product with "mini BOSS funnyletter" and clearly no reference to a luxury clothing brand. Thus, it is unreasonable to believe that a consumer looking for a HUGO BOSS product would go to walmart.com, see Defendant's children's hooded sweatshirt with the words "mini BOSS", and believe that Defendant's product is associated, originates, or otherwise affiliated with the HUGO BOSS luxury trademark. Plaintiff's products for sale are displayed below:



D.E. 55-18 at 74.



D.E. 55-18 at 82.

The item description for the product reads:

_____

Hello there!welcome to our shop! Quality first, providing the best service.

Customers are our friends.Stylish design,100% bnnd new, high quality!

Main color: black white Sleeve length style: long sleeve Material:cotton blend

Style: fashion, casual Package includes: 1x top hoodie

SizeTop length Bust* 2 Sleeve Age 70 35 cm 28.S cm 26 cm 0-6 months

8

    80 37cm 30 cm 38 cm 6-12 months

    90 39 cm 31.5 cm 30 cm 1-2 years old

    100 41.5 cm 33 cm 33 cm 2-3 years old

    110 44 cm 34.5 cm 34.5 cm 3-4 years old

    120 47 cm 36 cm 37 cm 4-S years old Package included: 1x Tops Hoodie
According to manual measurements, there is a 2-3% difference.

    Please check the metercarefully before purchasing the product. 1inch= 2.54 cm

    Please note that due to light and screen, you should be able to accept slight chromatic aberrations.

    Thank you for coming, if you are satisfied, please continue to support our store, thank you! mini BOSS funnyletter printed hoodie makes your kid baby more adorable
Material: cotton blend. Soft andcomfortable. High quality

- Babyclothes with very good quality, soft feeling and no damage to your babysskin Perfect for casual, photograph, party, baby shower gift, birthday gift, etc

    _____

The Eleventh Circuit has held that a generic term cannot be appropriated from public domain and receive trademark protection. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F3d 1312. As a result, the Eleventh Circuit appreciated that the prominent use of generic term by two competitors may understandably confuse consumers, but this does not make the term any less generic, for trademark purposes. *Id*. Under Eleventh Circuit law, Defendant maintains a viable defense that the term "boss" on clothing, in the context of humorous children's clothes sold on walmart.com, is not confusing similar to the HUGO BOSS luxury clothing brand.

While Plaintiff does include children's clothes and infantwear for the service trademark BOSS HUGO BOSS, it differs broadly from that of Defendant's product.

9

**Plaintiff's Registered Service Trademark**      **Defendant's Product**

   

D.E. 5-1 at 10.

Regarding service trademarks, the Eleventh Circuit specifically found that where the mark and the alleged infringed item are "visually dissimilar", there can be no likelihood of confusion and no trademark protection. *Welding Services, Inc. v. Forman*, 509 F.3d 1351 (11th Cir. Dec. 17, 2007) (finding on motion for summary judgment that there was no likelihood of confusion for generic mark). On this point, the word "BOSS HUGO BOSS" in Plaintiff's trademark and the words "mini BOSS" in Defendant's product have a different font and character spacing. There is simply no similarities between the two to suggest that consumers would be confused.

**2.    Plaintiff failed to register "BOSS" under Class 25 for children's clothing or infantwear, negating its purported trademark protection.**

Plaintiff's registration for the trademark "BOSS" references use under Class 25 as the following:

> FOR: ROBES, COATS, SHORT COATS, DENIM JACKETS, BLAZERS, TOPCOATS, PARKAS, RAINCOATS, RAINWEAR, TUNICS, BELTS, SLACKS, TROUSERS, OVERALLS, JUMPSUITS, PULLOVERS, BLOUSONS, SPORTS JERSEYS, BATHING SUITS, BEACH COVERUPS, PAJAMAS, SLEEPWEAR, LINGERIE, UNDERCLOTHING, BRAS, PANTIES, PETTICOATS, STOCKINGS, LEGGINGS, HOSIERY, SCARVES, SHAWLS, WRISTBANDS, HEADBANDS, HEADWEAR AND FOOTWEAR, EXCLUDING INDUSTRIAL OR PROTECTIVE FOOTWEAR, IN CLASS 25 (U.S. CLS. 22 AND 39).

D.E. 5-1 at 2.

Notably, the class of products under 25 do not include "baby clothes" or "infantwear". Therefore, Plaintiff is pursuing claims against Defendant for a category of products which are not included in its registration certificate. Specifically, Plaintiff's trademark registration does not include "baby clothes" or "infant wear" in its class of products. This glaring omission in the registration paperwork evidence that Plaintiff is overreaching in its pursuit against Defendant for infringement and false designation of origin.

Because Plaintiff maintains a service trademark, it is worth revisiting the Eleventh Circuit law providing that "visually dissimilar" cannot have a likelihood of confusion and do not warrant trademark protection. *Welding Services, Inc. v. Forman*, 509 F.3d 1351 (11th Cir. Dec. 17, 2007) (finding on motion for summary judgment that there was no likelihood of confusion for generic mark). Again, the word "BOSS HUGO BOSS" in Plaintiff's trademark and the words "mini BOSS" in Defendant's product have a different font and character spacing.

    **3.    Plaintiff failed to effectuate service.**

The purported email address that Plaintiff associated with Defendant's store is not Defendant's. Defendant is uncertain how and why Plaintiff chose to attempt service with its purported email address, however denies that it should have been permitted to be used for electronic service.

**C.    Plaintiff would suffer no prejudice from the requested relief**

Plaintiff would suffer no prejudice should this Court grant the relief requested because Plaintiff would not be hindered from pursuing its claims as discussed in

11

*Nationwide*, 175 F. App'x 523-24. Indeed, there is no reason to believe that any evidence or witnesses have been unavailable in the past day since this Court entered judgment.

## CONCLUSION

In conclusion, Defendant has demonstrated that Defendant moved within a reasonable amount of time to vacate the default, that Defendant has meritorious defenses to substantively defend itself in the case, and that Plaintiff will not be prejudiced by the relief requested.

WHEREFORE, Defendant respectfully requests for this Court to vacate its Orders on Default Judgment and Final Judgment and Permanent Injunction (D.E. 61, 62) as to Def. No. 178 (Store Shopping) entered on January 4, 2024.

Respectfully Submitted this 5th day of January, 2024.

/s/ Lydia Pittaway
Bar No. 0044790
**Ford Banister LLC**
305 Broadway - Floor 7
New York, NY 10007
Telephone: 212-500-3268
Email: lpittaway@fordbanister.com
*Attorney for Plaintiff*